Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL C. WOLFORD, and all similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION LLC,<br><br>Defendants. | Case No.: 2:17-cv-02140-JAD-VCF<br><br>**STIPULATION AND ORDER TO FILE FIRST AMENDED COMPLAINT** |

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 15(a)(2), LR 7-1, and LR IA 6-2, the parties have stipulated to Plaintiff filing his proposed First Amended Complaint, attached hereto as Exhibit 1.

[PROPOSED] STIPULATION AND ORDER TO FILE FIRST AMENDED COMPLAINT - 1

IT IS SO STIPULATED.

December 20, 2017

| /s/ Matthew I. Knepper | /s/ Jennifer L. Braster |
|---|---|
| Matthew I. Knepper, Esq.<br>Nevada Bar No. 12796<br>Miles N. Clark, Esq.<br>Nevada Bar No. 13848<br>KNEPPER & CLARK LLC<br>Email: matthew.knepper@knepperclark.com<br>Email: miles.clark@knepperclark.com<br><br>David H. Krieger, Esq.<br>Nevada Bar No. 9086<br>HAINES & KRIEGER, LLC<br>Email: dkrieger@hainesandkrieger.com<br>*Counsel for Plaintiff* | Jennifer L. Braster, Esq.<br>Nevada Bar No. 9982<br>Andrew J. Sharples, Esq.<br>Nevada Bar No. 12866<br>NAYLOR & BRASTER<br>Email: jbraster@naylorandbrasterlaw.com<br>Email: asharples@naylorandbrasterlaw.com<br><br>Andrew Michael Cummings, Esq.<br>JONES DAY<br>3161 Michelson Drive, Ste. 800<br>Irvine, CA 92612<br>Email: acummings@jonesday.com<br><br>*Counsel for Experian Information Solutions, Inc.* |
| /s/ Bradley T. Austin | /s/ Jason Revzin |
| Bradley T. Austin, Esq.<br>Nevada Bar No. 13064<br>SNELL & WILMER LLP<br>3883 Howard Hughes Pkwy., Ste. 1100<br>Las Vegas, NV 89169<br>Email: baustin@swlaw.com<br>*Counsel for Defendant*<br>*Equifax Information Services, LLC* | Jason Revzin, Esq.<br>Nevada Bar No. 8629<br>Lewis Brisbois Bisgaard & Smith LLP<br>6385 S. Rainbow Blvd., Suite 600<br>Las Vegas, NV 89118<br>Email: Jason.revzin@lewisbrisbois.com<br>*Counsel for Defendant Trans Union LLC* |

## <u>ORDER GRANTING</u>

## <u>STIPULATION AND ORDER TO FILE FIRST AMENDED COMPLAINT</u>

**IT IS SO ORDERED.**

IT IS HEREBY ORDERED that Plaintiff must file the First Amended Complaint on or December 29, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

Dated: December 20, 2017

[PROPOSED] STIPULATION AND ORDER TO FILE FIRST AMENDED COMPLAINT - 2

# Exhibit 1

## Proposed First Amended Complaint

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff
*DANIEL C. WOLFORD*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL C. WOLFORD,<br><br>    Plaintiff,<br><br> v.<br><br>DITECH FINANCIAL, LLC fka GREEN TREE SERVICING, LLC, a Delaware limited liability corporation, EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFROMATION SOLUTIONS, INC.; AND TRANS UNION LLC,<br><br>    Defendants. | Civil Action No.:<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

1.      This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2.      This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

3.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, the Defendants have a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## INTRODUCTION

4.      The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

5.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from

damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

6.     DANIEL C. WOLFORD ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), TRANS UNION, LLC ("TransUnion"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") (or jointly as "CRA Defendants"), and DITECH FINANCIAL, LLC fka GREEN TREE SERVICING, LLC, a Delaware limited liability corporation (collectively, "Defendants") with regard to erroneously reporting incomplete and inaccurate credit information.

7.     Defendants failed to properly investigate Plaintiff's credit report disputes, damaging Plaintiff's creditworthiness and "failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. §1681e(b).

8.     Further, Defendants named herein also failed to comply with their duties under 15 U.S.C. §1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

### PARTIES

9.     Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10.    Upon information and belief, Defendant DITECH FINANCIAL LLC ("Ditech") is a Delaware limited liability corporation with its principle place of business in Florida, and at all times relevant conducted business in Nevada.

11.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" (or

"CRA") as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

12.     Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Nevada, with a principal place of business in Ohio.

13.     Defendant TransUnion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. TransUnion is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Nevada.

14.     Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### GENERAL ALLEGATIONS

15.     On or about July 31, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 11-22171-mkn (the "Chapter 13" or "Bankruptcy").

16.     At the time the Bankruptcy was filed, the Plaintiff owned real property located at 572 Broomspun Street, Henderson, Nevada 89015 (the "Property").

17.     The Property was subject to a first mortgage deed of trust which was being serviced by BAC HOME LOAN SERVICING, INC. ("BAC"), but on information and belief, the mortgage service rights with an account number ending 2671, transferred to Ditech, on or about December 1, 2011 ("Ditech Account").

18.     On February 29, 2012, the Court entered an order confirming Chapter 13 Plan No. 3 which directed the Plaintiff to maintain all timely post-petition mortgage payments to BAC (the "Confirmation Order").

19.	A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

20.	Plaintiff made all payments required under the Confirmation Order, which included all payments due under the Ditech Account.

21.	On or about July 28, 2016, the Chapter 13 Trustee filed a Notice of Final Cure Payment ("NFC") finding that the amount required to cure any pre-bankruptcy default to Ditech was paid in full; and also finding that the Plaintiff was current on all monthly payments which became due to Ditech after filing the Bankruptcy through the date of the NFC (the "NFC Findings").

22.	Ditech filed a Response to the NFC Findings ("NFC Response") on August 11, 2016 agreeing with Chapter 13 Trustee's NFC Findings and deeming that all payments due after the Chapter 13 filing were timely paid.

23.	To date, Ditech has not moved to set-aside the Chapter 13 Trustee's NFC findings and the NFC Findings remain binding.

24.	Then, after dutifully completing all payments required to all creditors under the Confirmation Order (including BAC and then Ditech), the Bankruptcy Court entered an order discharging the Plaintiff on October 7, 2016 (the "Discharge").

25.	As evidenced by 1) the Confirmation Order, 2) Discharge and 3) lack of any bankruptcy court orders indicating the contrary during the pendency of the Plaintiff's Chapter 13 filing, the Plaintiff made timely payments to each and every creditor after filing Chapter 13 as required by law to present.

26.	To the extent that the Plaintiff's creditors (in particular Ditech) chose to furnish data to a CRA consistent with the terms of the Confirmation Order, such data should have been included in the Plaintiff's "consumer file".

27. Pursuant to 15 U.S.C. §1681g(a)(1), "[e]very consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer…[a]ll information in the consumer's file at the time of the request," subject to the Plaintiff providing "proper identification" pursuant to 15 U.S.C. §1681h(a)(1).

28. "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. §1681a(g).

29. In the current matter, the Defendant CRAs failed to comply with their statutory obligation to provide the Plaintiff all information in the Plaintiff's consumer file thereby violating the above defined statutory obligations.

30. Additionally, Defendants' conduct described herein also failed to comply with the Consumer Data Industry Association ("CDIA")'s Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

31. The CDIA publishes the Metro 2 reporting standards to assist furnishers and CRAs (like the Defendants) with their compliance requirements under the FCRA.

32. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005).

33. On information and belief, Defendants herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

34. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," "Plan Confirmed" and, in this case "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to

CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 through 6-22.

35. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

a. Current Balance

   i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the **outstanding balance amount**. *Id.*

   ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 plan balance, which should decline as payments are made**." *Id*. at 6-22.

   iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**."

   iv. Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage) Metro 2 instructs the furnisher to report the "***Outstanding balance amount***." *Id.*

b. Scheduled Monthly Payment Amount:

   i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "**contractual monthly payment amount.**" *Id*. at 6-21.

   ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 Payment Amount**." *Id*. at 6-22.

   iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**." *Id.*

   iv. Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage) Metro 2 instructs the furnisher to report the outstanding balance amount "***updated contractual monthly payment amount.***"

c. Account Status:

   i. For the "Month BK Filed", "Months Between Petition Filed & BK Resolution," "Plan Confirmed" and "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report the "**status at time of petition**."

   ii. However, for the "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" Metro 2 instructs the furnisher to report "***status that applies***." *Id*. at 6-22.

d. <u>Payment History:</u>

  i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "**contractual monthly payment amount**." *Id*. at 6-21.

  ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 Payment Amount**." *Id*. at 6-22.

  iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**." *Id*.

  iv. And, as applicable here, for "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" Metro 2 instructs the furnisher to report the outstanding balance amount "***first month, increment first position with value 'D'; in subsequent months, increment based on prior month's status.***"

36.    The Metro 2 Format's instructions require identical reporting for FAQ 28a's field "Date of Account Information", which should equal the "current month's date."

37.    Despite the Metro 2 Format's instructions, the Defendants named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

38.    In turn, the CRA Defendants rereported inaccurate and incomplete information, respectively, thus violating their respective duties to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when providing a cconsumer with a disclosure of his consumer file.

39.    To this end, the incomplete reporting provided to the Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

40.    A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## THE EQUIFAX VIOLATIONS

**Ditech Failed on investigation of Plaintiff's Dispute to Report Complete Information about the Ditech Account No. Ending 2671**

41.    Plaintiff requested and received a consumer disclosure from Equifax dated November 29, 2016 identified by Equifax Confirmation No. 6334048673 (the "Equifax Disclosure").

42.    Specifically, on information and belief, the Equifax Disclosure indicated that positive data Ditech should have been reporting was suppressed or missing altogether, thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy. That is, the material omission of Plaintiff's post-discharge positive payment history on his mortgage was patently incorrect because he was in fact making timely monthly payments on the Ditech Account ("Positive Suppressed Data").

43.    This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Ditech.

44.    Accordingly, on or about June 21, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in the Plaintiff's Equifax Disclosure.

45.    Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above incomplete and materially misleading omissions be corrected to include the Positive Suppressed Data.

46.    The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by Ditech to the Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

47.    In part, the Equifax Dispute Letter stated:

Attached is a copy of my driver's license and other documentation to prove my identity. Your company provided me with a consumer credit file which is attached. As you can see from your credit file and attached documents, I have a mortgage account with **DITECH** (**Account No. 2671**) and you are not reporting complete

information about this account. Specifically, I obtained information from **DITECH** in which **DITECH** provided proof (attached) it furnished to you that I was "current" with my payments after my Chapter 13 filing as of and through May 2017. Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account. Accordingly, please stop suppressing this information. Your failure to report this data is lowering my credit score.

48.     Indeed, the RFI Response laid transparent the Positive Suppressed Data which Equifax failed to include in the Plaintiff's Credit File.

49.     After receiving the Equifax Dispute Letter, Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

50.     On or about July 18, 2017, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 7181054971) that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, Equifax failed to correct the Plaintiff's Credit File to include the Positive Suppressed Data in Ditech's updated tradeline.

51.     A reasonable investigation by Equifax and Ditech should have resulted in an update to Ditech's tradeline to include the Positive Suppressed Data.

52.     Ditech and Equifax therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

53.     Ditech and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

54. Ditech and Equifax re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File. Specifically, the Positive Suppressed Data continued to remain suppressed and thus omitted from the Plaintiff's Consumer File.

55. Ditech and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

56. Due to Ditech and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

57. And, because notice of the results of reinvestigation constitutes a consumer report within the meaning of 15 U.S.C. §§ 1681a(d), 1681i(a)(6)(B)(ii), the materially omission of the Positive Suppressed Data on the notice of results of reinvestigation perfected Plaintiff's injury as soon as Equifax provided it Plaaintiff.

58. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

59. Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless resulting in this suit. Indeed, Equifax was provided the evidence of its illegal suppression and willful failed to make the requested corrections to the Plaintiff's Credit File.

60. Equifax timely notified Ditech of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Plaintiff is, accordingly, eligible for statutory damages.

61. Also as a result of Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation fear

of credit denials, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

62.     By reporting incomplete and inaccurate account information relating to Ditech's Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

## <u>THE EXPERIAN VIOLATIONS</u>

### Ditech and Experian Failed on investigation of Plaintiff's Dispute to Report Complete Information about the Ditech Account No. Ending 2671

63.     Plaintiff requested and received a consumer file from Experian dated November 29, 2016 identified by Experian Report No. 3513-8711-56 (the "Experian Disclosure")

64.     Specifically, on information and belief, the Experian Disclosure indicated that positive data Ditech should have been reporting was suppressed or missing altogether, thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy. That is, the material omission of Plaintiff's post-discharge positive payment history on his mortgage was patently incorrect because he was in fact making timely monthly payments on the Ditech Account ("Positive Suppressed Data").

65.     This failure caused the Plaintiff's Experian Disclosure to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Ditech.

66.     Specifically, on information and belief, Ditech furnished positive credit data to Experian stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations from after the Chapter 13 was filed on July 31, 2011 through the date of the date the Credit File was created, November 29, 2016, essentially five years of suppressed positive monthly account notations that the mortgage was being timely paid (the "Positive Suppressed Data").

67.     However, Experian failed to include the Positive Suppressed Data in the Plaintiff's Consumer Disclosure and alternatively reported this timely paid account as an "account that may considered negative".

68.     Accordingly, on or about June 21, 2017, pursuant to 15 U.S.C. § 1681i(a)(1), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in the Plaintiff's Credit File.

69.     Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above incomplete and materially misleading omissions be corrected to include the Positive Suppressed Data.

70.     The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by Ditech to the Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

71.     In part, the Experian Dispute Letter stated (in part):

> Attached is a copy of my driver's license and other documentation to prove my identity.  Your company provided me with a consumer credit file which is attached.  As you can see from your credit file and attached documents, I have a mortgage account with **DITECH** (**Account No. 2671**) and you are not reporting complete information about this account.  Specifically, I obtained information from **DITECH** in which **DITECH** provided proof (attached) it furnished to you that I was "current" with my payments after my Chapter 13 filing as of and through May 2017.  Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

> You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.

72.     Indeed, the RFI Response laid transparent the Positive Suppressed Data which Experian failed to include in the Plaintiff's Credit File.

73.   After receiving the Experian Dispute Letter, Experian was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

74.   On or about July 18, 2017, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 3513-8711-56) that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, Experian failed to correct the Plaintiff's Credit File to include the Positive Suppressed Data in Ditech's updated tradeline.

75.   A reasonable investigation by Experian would have updated Ditech's tradeline to include the Positive Suppressed Data.

76.   Ditech and Experian therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

77.   Ditech and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

78.   Ditech and Experian re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File. Specifically, the Positive Suppressed Data continued to remain suppressed and thus omitted from the Plaintiff's Consumer File. Even worse, Experian reported that the Ditech Account was included in Plaintiff's Chapter 13 Bankruptcy on February 14, 2017, even though Plaintiff was discharged from his bankruptcy October 7, 2016.

79.   Ditech and Experian, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

80.   Due to Ditech and Experian's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. §

1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

81. And, because notice of the results of reinvestigation constitutes a consumer report within the meaning of 15 U.S.C. §§ 1681a(d), 1681i(a)(6)(B)(ii), the materially omission of the Positive Suppressed Data on the notice of results of reinvestigation perfected Plaintiff's injury as soon as Experian provided it Plaintiff.

82. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

83. Plaintiff's efforts to correct Experian's incomplete and inaccurate reporting were fruitless resulting in this suit. Indeed, Experian was provided the evidence of its illegal suppression and willful failed to make the requested corrections to the Plaintiff's Credit File.

84. Experian timely notified Ditech of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i Experian's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Plaintiff is, accordingly, eligible for statutory damages.

85. Also as a result of Experian's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

86. By reporting incomplete and inaccurate account information relating to Ditech's Account after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

## THE TRANSUNION VIOLATIONS

### TransUnion Failed to Report Complete
### Information about Ditech
### Account No. Ending 2671

87.    Plaintiff requested and received a consumer file from TransUnion dated November 21, 2016 identified by TransUnion File No. 369986787 (the "Credit File").

88.    Specifically, TransUnion took a "one size fits all approach" and rather than provide a "complete" and "accurate" Credit File to the Plaintiff, "suppressed" positive data being furnished from Ditech thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy. However, TransUnion alternatively failed to report timely mortgage payments on the Property reported by Ditech.

89.    This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Ditech.

90.    Specifically, Ditech furnished positive credit data to TransUnion stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations from after the Chapter 13 was filed on July 31, 2011 through the date of the date the Credit File was created, November 21, 2016, essentially five years of suppressed positive monthly account notations that the mortgage was being timely paid (the "Positive Suppressed Data").

91.    However, TransUnion failed to include the Positive Suppressed Data in the Plaintiff's Credit File.

92.    Accordingly, on or about June 21, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed TransUnion's incomplete reporting by notifying TransUnion, in writing, of the incomplete and inaccurate credit information contained in the Plaintiff's Credit File.

93. Specifically, Plaintiff sent a letter, certified, return receipt, to TransUnion (the "TransUnion Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

94. The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by Ditech to the Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

95. In part, the TransUnion Dispute Letter stated (in part):

> Attached is a copy of my driver's license and other documentation to prove my identity. Your company provided me with a consumer credit file which is attached. As you can see from your credit file and attached documents, I have a mortgage account with **DITECH** (**Account No. 2671**) and you are not reporting complete information about this account. Specifically, I obtained information from **DITECH** in which **DITECH** provided proof (attached) it furnished to you that I was "current" with my payments after my Chapter 13 filing as of and through May 2017. Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.
>
> You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account. Accordingly, please stop suppressing this information. Your failure to report this data is lowering my credit score.

96. Indeed, the RFI Response laid transparent the Positive Suppressed Data which TransUnion failed to include in the Plaintiff's Credit File.

97. After receiving the TransUnion Dispute Letter, TransUnion was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

98. On or about June 29, 2017, Plaintiff received notification from TransUnion through its "reinvestigation" (TransUnion File No. 369986787) that TransUnion received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, TransUnion failed to correct the Plaintiff's Credit File to include the Positive Suppressed Data in Ditech's updated tradeline.

99. A reasonable investigation by TransUnion would have updated Ditech's tradeline to include the Positive Suppressed Data. However, Trans Union failed to even provide notice of Plaintiff's dispute to Ditech before unilaterally suppressing Positive Suppressed Data, thus constituting a willful violation of 15 U.S.C. § 1681i(a)(2).

100. TransUnion therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

101. TransUnion failed to review all relevant information provided by Plaintiff in the dispute to TransUnion, as required by and in violation of 15 U.S.C. §1681i(a).

102. TransUnion re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File. Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from the Plaintiff's Credit File.

103. TransUnion, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

104. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

105. Plaintiff's efforts to correct TransUnion's incomplete and inaccurate reporting were fruitless resulting in this suit. Indeed, TransUnion was provided the evidence of its illegal suppression and willful failed to make the requested corrections to the Plaintiff's Credit File.

106. TransUnion's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Plaintiff is, accordingly, eligible for statutory damages.

107. Also as a result of TransUnion's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without

limitation fear of credit denials, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

108. By reporting incomplete and inaccurate account information relating to Ditech's Account after notice and confirmation of its errors, TransUnion failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ.* (FCRA)

109. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

111. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

112. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

/ / /

### First Cause Of Action
### Violation Of The Fair Credit Reporting Act
### 15 U.S.C. § 1681 et seq. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

### Trial By Jury

113. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

/ / /

Dated: December 20, 2017

Respectfully submitted,

/s/ *Matthew I. Knepper, Esq.*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorneys for Plaintiff
*DANIEL C. WOLFORD*